

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 31, 2008**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CHAPTER 11 |
| RENAISSANCE HOSPITAL – GRAND PRAIRIE, | § | |
| INC. D/B/A RENAISSANCE HOSPITAL, ET AL., | § | CASE NO.: 08-43775-11 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

**MEMORANDUM OPINION**
**[Relates to Dkt Nos. 320 & 321]**

Before the court are the *Application of Patient Care Ombudsman for Authority for the Retention and Employment of Focus Management Group USA, Inc., as Medical Operations Advisor* (the "Advisor Application")[1] and the *Application for Authorization of the Employment and Retention of Hunton & Williams LLP as Counsel for Patient Care Ombudsman Pursuant to §§ 105, 330 & 333* (the "Attorney Application" and, together with the Advisor Application, the

---

[1]     The Advisor Application was filed at docket no. 320.

"Applications"), [2] both filed by the Ombudsman (as defined below). The court conducted a

hearing on the Applications on October 27, 2008 (the "Hearing"). The Ombudsman testified in

support of the Applications at the Hearing, and no party opposed either of the Applications.

Following the Hearing the court requested that various parties submit briefs by November

11, 2008, addressing the issue of the ability of a health care ombudsman to retain professionals.

The court received briefs addressing the Applications from the United States Trustee (the

"UST"), Debtors, [3] the Official Committee of Unsecured Creditors (the "Committee") and, on his

behalf, the proposed counsel for the Ombudsman.

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and

157(b)(2)(A). This memorandum opinion constitutes the court's findings of fact and conclusions

of law. See Fed. R. Bankr. P. 9014 and 7052.

## I. BACKGROUND

Debtors in this case filed their respective chapter 11 petitions beginning on August 21,

2008, and thereafter through August 26, 2008. On September 10, 2008, an order providing for

joint administration of the various cases was entered. Debtors continue to operate their

businesses as debtors in possession pursuant to sections 1107 and 1108 [4] of the Bankruptcy Code

(the "Code"). [5] On September 12, 2008, the UST appointed the Committee. The Committee has

retained counsel with the court's approval.

---

[2]     The Attorney Application was filed at docket no. 321.

[3]     The term Debtors includes Renaissance Hospital – Grand Prairie, Inc., d/b/a Renaissance Hospital –Grand
Prairie, Renaissance Hospital Dallas, Inc., Houston Community Hospital, Inc., d/b/a Renaissance Hospital
– Houston, Renaissance Hospitals, Inc., d/b/a Renaissance Hospital – Groves, and Renaissance Healthcare
Systems, Inc.

[4]     The debtor Renaissance Hospital Terrell, Inc., d/b/a Renaissance Hospital – Terrell has already confirmed a
plan.

[5]     11 U.S.C. §§ 101 *et seq.*

Debtors operate hospitals at several locations in the state of Texas. It is not contested that each Debtor is a "health care business" within the meaning of Code § 101(27)(A).

On September 25, 2008, the court entered an order directing the UST to appoint a patient care ombudsman in Debtors' cases pursuant to section 333 of the Code. On October 1, 2008, the UST in turn gave notice of the appointment of Dan McMurray as patient care ombudsman (the "Ombudsman") in these cases.

After his appointment, the Ombudsman filed the Applications on October 10, 2008. In general terms, the Advisor Application seeks court approval for the Ombudsman to employ his hospital management company as his "advisor" so that it may be paid from estate assets. The Attorney Application seeks court approval for the Ombudsman to employ counsel to be paid from estate assets.

## II. ISSUES

The absence of any clear statutory guidance or case law led the court to ask the UST, the Ombudsman, Debtors, and the Committee to submit briefs addressing the Ombudsman's ability to employ professionals. The issues presented to the court are relatively straightforward:

1) Can a patient care ombudsman employ counsel at the expense of the estate, and if so for what purposes?

2) Can a patient care ombudsman employ other professionals at the expense of the estate, and if so for what purposes?

3) If a patient care ombudsman can employ professionals, to what extent should the court grant the Attorney Application and the Advisor Application?

## II. DISCUSSION

### A. General

In creating the role of patient care ombudsman in 2005, Congress made no provision for retention by an ombudsman of professionals. While providing for appointment of a patient care ombudsman and describing the ombudsman's duties in new Code § 333[6], Congress also

---

[6] Section 333 does not address retention of professionals to assist a patient care ombudsman. Section 333 states:

> **(a)(1)** If the debtor in a case under chapter 7, 9, or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.
>
> **(2)(A)** If the court orders the appointment of an ombudsman under paragraph (1), the United States trustee shall appoint 1 disinterested person (other than the United States trustee) to serve as such ombudsman.
>
> **(B)** If the debtor is a health care business that provides long-term care, then the United States trustee may appoint the State Long-Term Care Ombudsman appointed under the Older Americans Act of 1965 for the State in which the case is pending to serve as the ombudsman required by paragraph (1).
>
> **(C)** If the United States trustee does not appoint a State Long-Term Care Ombudsman under subparagraph (B), the court shall notify the State Long-Term Care Ombudsman appointed under the Older Americans Act of 1965 for the State in which the case is pending, of the name and address of the person who is appointed under subparagraph (A).
>
> **(b)** An ombudsman appointed under subsection (a) shall--
>
> **(1)** monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians;
>
> **(2)** not later than 60 days after the date of appointment, and not less frequently than at 60-day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the debtor; and
>
> **(3)** if such ombudsman determines that the quality of patient care provided to patients of the debtor is declining significantly or is otherwise being materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination.
>
> **(c)(1)** An ombudsman appointed under subsection (a) shall maintain any information obtained by such ombudsman under this section that relates to patients (including information relating to patient records) as confidential information. Such ombudsman may not review confidential patient records unless the court approves such review in advance and imposes restrictions on such ombudsman to protect the confidentiality of such records.
>
> **(2)** An ombudsman appointed under subsection (a)(2)(B) shall have access to patient records consistent with authority of such ombudsman under the Older Americans Act of 1965 and under non-Federal laws governing the State Long-Term Care Ombudsman program.

amended section 330 of the Code to provide for compensating and reimbursing expenses of an ombudsman but made no provision in that section for compensation of an ombudsman's professionals, nor did Congress amend section 327 or provide elsewhere for the employment of professionals by a patient care ombudsman. Neither does the legislative history to section 333 suggest that a patient care ombudsman may retain professionals.

For reasons discussed below, the court nevertheless concludes that Congress intended that a patient care ombudsman would at least be able to retain professionals for limited purposes. The court does not, however, rely on existing case law in reaching this conclusion.

In analyzing the issues before the court, it is important to begin by noting the distinction between the role of an ombudsman as compared to that of other fiduciaries compensated (together with their retained professionals) by the estate. A trustee or debtor in possession and its professionals have the duty of preserving, protecting and maximizing the estate. See, e.g., *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985). A committee and its professionals serve a constituency with an economic interest in the estate. See, e.g., *In re Nationwide Sports Distrib., Inc.*, 227 B.R. 455, 463 (Bankr.E.D.Pa.1998). A committee will have a common interest with representatives of other economic constituencies in preserving value for creditors (and even equity owners) as well as enhancing the estate.

A patient care ombudsman, on the other hand, is concerned with a constituency[7] whose interests do not necessarily coincide with the economic interests of other case participants. The ombudsman therefore is not concerned with the economics of the case. His very job is to ensure

---

[7] The ombudsman acts in aid of the rights of "patients." Patient is defined in Code § 101(40A) as an "individual who obtains or receives services from a health care business."

that his constituents – patients – are well cared for by the debtor in possession (or trustee).  He

may press for the debtor in possession (or trustee) to take costly measures that will deplete rather

than enhance the estate and the ultimate recovery of creditors.  The result is that the court and

other parties cannot view a patient care ombudsman as they do a fiduciary whose job includes

improving an estate's value.

One of the inherent goals in a bankruptcy case is to ensure that what is paid for from the

estate provides a comparable return to the estate.  See *In re Office Products of Am., Inc.*, 136

B.R. 983, 991 (Bankr.W.D.Tex. 1992); *In re Consol. Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th

Cir.1986).  Because a patient care ombudsman's cost to the estate will not be (or at least is

unlikely to be) offset by any accretion of value to the estate, it is incumbent upon the court to

ensure that the patient care ombudsman, while fulfilling his statutory role, does not create a

serious drain on estate assets.  In short, retention by an ombudsman of professionals is not

consistent with the central purpose of bankruptcy in general and chapter 11 in particular:

improving return to creditors and equity owners.

The parties have cited the court to two categories of cases which they contend support the

authority of an ombudsman to retain professionals.  The first group consists of cases that rely on

section 330(a)(1)(B), which provides for "reimbursement" of an ombudsman's "actual, necessary

expenses," as authority for employment and payment of professionals for an ombudsman.  The

UST cites to *In re Haven Eldercare, LLC,* 382 B.R. 180, 184 (Bankr.D.Conn. 2008) and the

Ombudsman cites to a series of unpublished orders in support of this view.  Leaving aside the

obvious problem inherent in the requirement that the payment be a "reimbursement," however,

there is ample authority that section 330(a)(1)(B) does not allow payment from the estate of

professionals used by a fiduciary of the sort (including a patient care ombudsman) described in

section 330(a)(1). See, e.g., *In re ACandS, Inc.*, 297 B.R. 395, 404-05 (Bankr.D.Del.2003); *In re United Companies Financial Corp.*, 241 B.R. 521, 528 (Bankr.D.Del.1999).

The second category of cases cited by the parties depends upon Code § 105. See *Matter of Linton*, 136 F.3d 545, 545 (7th Cir. 1998); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2nd Cir. 1990); *In re Southmark Corporation*, 113 B.R. 280, 281 (Bankr.N.D.Tex. 1990); *In re Skil-Aire Corp.*, 142 B.R. 692, 697 (Bankr.D.N.J. 1992); *In re Tighe Mercantile, Inc.*, 62 B.R. 995, 1001 (Bankr.S.D.Cal. 1986); *In re Fibermark, Inc.*, Case No. 04-104463, WL 3310476 (Bankr.D.Vt. 2005). The relevance of these cases depends upon analogizing employment of professionals by an ombudsman to their employment by an examiner appointed pursuant to Code § 1104(c). Notwithstanding the failure of Congress to mention an examiner in section 327(a) or to refer to an examiner's professionals in section 330, courts have allowed examiners to employ professionals. See *Southmark*, at 281; *Tighe Mercantile*, at 1001;and *Fibermark*.

An examiner, however, presents a very different case than does an ombudsman. Besides being a fiduciary whose focus is on the estate and enhancement of recovery by economic constituencies (see Code §§ 1103, 1106(b), 1107(a), 1108; *In re Advisory Comm. of Major Funding Corp.*, 109 F.3d 219, 224 (5th Cir. 1997); *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 797 (Bankr.S.D.Tex. 1993); *In re Lowry Graphics, Inc.*, 86 B.R. 74, 76 (Bankr.S.D.Tex. 1988)) and thus performing very different functions from those assigned an ombudsman, an examiner may be assigned many of the duties of a trustee or debtor in possession. See Code § 1106(b); *In re Mirant Corp.*, 2004 WL 2983945, *2 (Bankr.N.D.Tex. 2004) citing *NBD Park Ridge Bank v. SRJ Enters. ( In re SRJ Enters.)*, 151 B.R. 189, 196 (Bankr.N.D.Ill. 1993), *In re Pub. Serv. Co. of New Hampshire*, 99 B.R. 177, 182 (Bankr.D.N.H.1989) and *In re UNR Indus.*, 72 B.R. 789, 795 (Bankr.N.D.Ill. 1987). It is only logical that an examiner, charged with duties

of a trustee, would have the same authority as a trustee or debtor in possession to engage professionals in performing those duties. Indeed, it is but a small stretch to interpret Code §§ 1106(b) and 1107 (respectively authorizing expansion of an examiner's duties to include trustee duties otherwise to be performed by a debtor in possession and delineating the rights, powers and duties of a debtor in possession) as extending to an examiner the same authority as a trustee or debtor in possession to employ professionals under section 327(a).

Finally, the ability of examiners to employ professionals has been settled under the law for some time. See, e.g*., Southmark*. There is no need now for Congress to amend section 327(a) or section 330 to clarify that authority. On the other hand, Congress's failure to modify sections 327 and 330, dealing with professional employment and compensation, to accommodate the potential needs of an ombudsman suggests a conscious decision on Congress's part not to give ombudsmen the authority to employ. Cf. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Such a reading is consistent with an ombudsman's limited role in a case and the small likelihood that carrying out that role will contribute to a case's economic success.

All that said, however, the court concludes that in proper circumstances and for limited purposes an ombudsman may retain professionals. First, Code § 333(b)(3) and Fed. R. Bankr. P. 2015.1 clearly contemplate that an ombudsman may be required to file and advocate before the court motions. As it is doubtful that every suitable candidate for the ombudsman role will possess not only the qualifications necessary to "monitor the quality of patient care" but also the expertise necessary to prepare legal documents and appear in court, it seems clear that Congress must have anticipated that an ombudsman would, on occasion, have to have the assistance of counsel.

Second, section 333(a)(2)(A) provides that, if the court directs appointment of an ombudsman, "the United States trustee shall appoint 1 disinterested *person* to serve as such ombudsman" (emphasis supplied). Section 101(41) of the Code defines "person" as including "individual, partnership and corporation." Thus a partnership or corporation could be appointed to serve as a patient care ombudsman.[8] A partnership or corporation, unlike an individual, cannot act in court other than through an attorney. See *Southwest Exp. Co., Inc. v. I. C. C.*, 670 F.2d 53 (5th Cir. 1982); *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20 (2d Cir. 1983). Since, as noted above, a patient care ombudsman may be required to move the court, any corporation or partnership appointed as an ombudsman would have to have counsel to perform its duties.[9]

For these reasons the court concludes that authorizing employment of counsel – and by extension other professionals – by a patient care ombudsman is, as required by Code § 105(a), "necessary [and] appropriate to carry out the provisions of [the Code]." A patient care ombudsman is an important new party in those cases in which appointment of such a person is warranted. The court must ensure that an ombudsman have the tools – including, as appropriate, professionals – necessary and appropriate to performing his statutory duties and so protecting and assisting the patients who are his constituency.

---

[8]   Had Congress wished only individuals to serve as ombudsmen, it could have so specified. Cf. 11 U.S.C. §§ 101(40A), 333(a)(2)(A), 523(a), 109(e) among others. Just as Congress consciously elected to allow appointment of a partnership or corporation to serve as a trustee (both section 701 and section 1104(a) provide for the appointment as trustee of "one disinterested person")(see 7 Collier on Bankruptcy, ¶ 1104.02[7][b] at 1104-28 (15th ed. rev. 2005)), so too the court may conclude that Congress intended such an entity might serve as an ombudsman.

[9]   On the other hand, sections 1109 and 1121 of the Code contemplate that a debtor, including a corporation or partnership, will continue to participate in a chapter 11 case after appointment of a trustee. Case law, however, suggests counsel for such a debtor may not be compensated with estate funds. See *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998), cited with approval in *Lamie* at 537. A distinction between the two situations is that the chapter 11 debtor's participation after appointment of a trustee is optional; the ombudsman is mandated, in the proper circumstances, to act. (An "ombudsman appointed under subsection (a) *shall*…file with the court a motion…" (emphasis supplied). *See* 11 U.S.C. 333(b)(3))

That said, the duties of professionals employed by an ombudsman should be carefully circumscribed, and employment of a professional by an ombudsman should be authorized only upon a clear showing of need; the ombudsman is not intended to hire others to perform his monitoring and assessment duties, nor is an ombudsman a necessary participant in most aspects of a bankruptcy case. Representation of ombudsmen ought not to become a new profit center for law firms and other professionals. Estates, particularly in the case at bar, are not so flush with funds that adding an additional layer of administrative expense to the ordinary costs of chapter 11 is without consequence for the economic constituencies who are the focus and principal intended beneficiaries of the bankruptcy process.

In determining the relief the Ombudsman should receive respecting the Applications, the court must therefore balance, on the one hand, the importance of maximizing the recovery by economic constituencies against the equally significant need to ensure that the Ombudsman is able to assist and protect patients as Congress intended. In achieving this balance the court must carefully consider the purposes for which the Ombudsman seeks to retain professionals. To the extent the professionals might be utilized other than to accomplish or facilitate the patient-oriented tasks of the Ombudsman, it is necessary that the court restrict the relief it grants. Otherwise, any activity by a professional falling within the ordered scope of that professional's employment may be compensable from the estate whether or not it provides benefit to either patients or Debtors' estates. See *In re Barron*, 325 F.3d 690, 694 (5th Cir.2003); *In re Texas Securities, Inc.*, 218 F.3d 443, 445-446 (5th Cir. 2000).

B. **The Attorney Application**

In the Attorney Application, the Ombudsman asks that he be authorized to retain Hunton & Williams, LLP ("H&W") as legal counsel to perform the following tasks:

(a) take all necessary action to advise, represent and assist the Ombudsman in fulfilling his statutory duties pursuant to 11 U.S.C. Section 333, including monitoring the quality of patient care and representing the interests of the Debtors' patients;

(b) advise, represent and assist the Ombudsman in complying with all bankruptcy laws, health laws and regulations, and privacy laws and in maintaining confidentiality when taking actions to fulfill his statutory duties, including reviewing patient records, reviewing complaints by patients and agencies, reviewing hospital equipment and facilities, and conducting interviews;

(c) take all necessary action to minimize the Ombudsman's exposure to, and defend the Ombudsman against, liability, including defending any action commenced against the Ombudsman;

(d) advise, represent and assist the Ombudsman in reporting to the Court after notice to interested parties his findings as to the quality of patient care and other issues no later than sixty-days after the Appointment Date, and at sixty-day or shorter intervals thereafter, or immediately, if the Ombudsman determines patient health care is declining significantly or is otherwise being materially compromised;

(e) attend meetings and negotiate with the Debtor, representatives of the creditors and other parties-in-interest with respect to health care quality and other related issues;

(f) prepare all motions, applications, answers, orders, reports and papers necessary to allow the Ombudsman to fulfill his statutory duties and oversee the quality of patient care;

(g) advise, represent and assist the Ombudsman with respect to his participation in, and analyzing the consequences and health concerns regarding, asset sales, acceptance, assignments, and rejections of leases and confirmation of plans of reorganization; and

(h) appear before the Court, any appellate courts and the U.S. Trustee and protect the rights and interests of the Ombudsman and the Debtors' patients before those Courts and the UST.

Attorney Application, ¶ 18.

Although the court concludes that an ombudsman may require the assistance of counsel in the performance of his duties, the foregoing description of services H&W is to perform is far

too broad.  H&W is being retained principally for its bankruptcy expertise.[10]  As the role of H&W in Debtors' chapter 11 cases must be limited by the role of the Ombudsman, H&W may be retained for bankruptcy purposes only to the extent the Ombudsman will require services in performance of the duties assigned by the Code.

The duties assigned the Ombudsman relate to patient care, and an ombudsman's attorneys should be limited in their assignment to doing what is required to protect and enhance the care of patients.  Counsel to an ombudsman does not require a license to generally monitor and participate in all phases of a bankruptcy case.[11]

Two functions are required of the attorneys representing the Ombudsman.  First, the Ombudsman must be assisted in identifying and understanding those laws intended to protect patients and those laws intended to regulate, to such end, Debtors' businesses.  Second, counsel must press such motions as the Ombudsman may be required to file under Code section 333 or Rule 2015.1; additionally counsel may aid the Ombudsman in identifying and opposing relief requested by other parties which, if granted, would cause patient care to deteriorate or otherwise adversely affect patients' rights.  Only to the extent of the foregoing is the court justified in approving employment of and compensation for H&W for monitoring and participating in Debtors' cases.

Additionally, the court will specifically address the request that H&W assist the Ombudsman in preparing the reports required by section 333(b).  A patient care ombudsman's

---

[10]    Attorney Application, ¶ 21, lists the H&W attorneys who are to be employed in these chapter 11 cases. Michelle A. Mendez and Cameron Kinvig, both located in H&W's Dallas office, are shown on H&W's web site as bankruptcy and restructuring lawyers.  Matt Jenkins, located in Richmond, Virginia, is shown on the web site as a health care lawyer.  The court did not find the fourth lawyer (Caroline Penninck) listed on H&W's web site.

[11]    The court notes that at the Hearing H&W advised that it recognized its employment should be limited in scope.  While, in this instant case, the court would be inclined to trust counsel not to "work the file," the present context is a useful one in which to address generally representation of ombudsmen.

reports should focus on patient care, not the law. Moreover, an ombudsman, like a non-lawyer trustee or examiner, should be competent to prepare a report. Thus, H&W's assistance is not required in this task except to the extent that it is necessary to ensure the accuracy of any statement about health care law in a report by the Ombudsman.

In order for H&W efficiently and economically to perform its duties, it is necessary that it and the Ombudsman be certain to receive notice of matters that may affect the care or rights of patients. Accordingly, any party that files a pleading seeking relief in these chapter 11 cases which relief might affect the care or rights of patients shall serve a copy of such pleading on H&W and the Ombudsman.[12] In the event that, in a given pleading, a party seeks multiple forms of relief only some of which may affect the care or rights of patients, the filing party shall designate that relief which may affect the care or rights of patients. Pleadings responsive to pleadings served as provided above upon H&W and the Ombudsman shall be served on H&W and the Ombudsman as well.

C. **The Advisor Application**

The Advisor Application, at ¶ 10, lists the duties proposed for Focus Management Group USA, Inc. ("Focus") as:

(a)     Conducting patient and hospital staff interviews as required;

(b)     Reviewing license and governmental permits;

(c)     Reviewing adequacy of staffing, supplies and equipment;

(d)     Reviewing safety standards;

(e)     Reviewing facility maintenance issues or reports;

(f)     Reviewing patient, family, staff or employee complaints;

(g)     Reviewing risk management reports;

(h)     Reviewing litigation which relates to the respective Debtor's patient care or which may affect the interest of patients;

(i)     Reviewing other information, including, without limitation, EMTALA violations, lists of death and hospital codes, in-patient and out-patient surgery schedules, surgery cancellations, patient satisfaction survey results, regulatory and/or JCAHO reports, utilization review reports, discharged and transferred patient reports, staff recruitment plan and nurse/patient/acuity staffing plans;

(j)     Reviewing financial information, including, without limitation, current financial statements, cash projections, accounts receivable reports and accounts payable reports, insofar as it may affect the interests of patients; and

(k)     Assisting the Ombudsman with such other services as may be necessary or appropriate pursuant to Section 333 of the Bankruptcy Code.

Advisor Application, ¶ 10.

It appears to the court that the Advisor Application is intended largely to allow the Ombudsman to delegate certain of his duties as a patient care ombudsman to his coworkers at Focus (items a,b,c,d,e,f,g, i, and j above). The general rule in bankruptcy is that a fiduciary employed at estate expense will not be permitted to hire a professional to perform those duties statutorily assigned specifically to the fiduciary. See*, e.g., In re Computer Learning Centers, Inc.*, 285 B.R. 191, 206 (Bankr.E.D.Va.2002). While a fiduciary may seek reimbursement for expenses incurred by the fiduciary's employer, it is unlikely that the cost of the time of those persons listed in the Advisor Application would fall into the category of "actual, necessary expenses."

The UST could have appointed Focus itself as the Ombudsman in these cases; Focus is apparently a corporation and so is a "person" within the meaning of Code § 333.[13] The Advisor

---

[12]     Should a party fail to serve the Ombudsman, Debtors shall do so.

[13]     The United States Trustee Manual (the "Manual"), while recognizing a preference for individuals in trustee or examiner appointments, acknowledges that "partnerships and corporations may be eligible to serve as trustees or examiners . . .." Manual at § 3-9.6.3, p. 149. *See, similarly,* Chapter 11 Trustee

Application asserts Focus is disinterested and so itself would be qualified to serve as a patient

care ombudsman. Appointment of Focus as the ombudsman apparently would have been

preferable in the case at bar. If the burden of serving as the patient care ombudsman in these

cases is beyond the capability of an individual, an entity with greater capacity should be assigned

the role rather than dividing it up through the use of an advisor. [14]

Nevertheless the UST supports the Advisor Application. Despite the court's concern

over the proliferation of professionals, the effect of granting the Advisor Application is not

necessarily an increase in estate expense; while in a future case the court might not authorize an

arrangement by which an individual appointed as a patient care ombudsman would parcel out his

duties, here the court assumes the UST did not initially consider the disadvantage of appointing

an individual. The court further assumes that the UST will be vigilant (as the court will be) in

this case in reviewing any charges by Focus to ensure Debtors' estates are depleted no more than

is necessary to the proper performance of the patient care ombudsman role.

However, the Advisor Application is broader than is justifiable based on the record

before the court. Having been authorized to retain legal counsel, it is unclear why Focus, as well

as H&W and the Ombudsman himself, should review litigation relating to patient care or the

interests of patients. Likewise, the catch-all provision in item "k" above is too broad. The court

will limit the employment of Focus accordingly.

## IV. CONCLUSION

---

Handbook at 8. Although these sources refer only to trustees and examiners, presumably the UST likewise has a preference for appointing individuals as ombudsmen.

[14] Indeed, the reason stated in the Manual (p. 149) for preferring individuals for appointments is that "responsibility and accountability are centered on one person rather than being diffused throughout a larger [sic] organization." Yet the effect of granting the Advisor Application is the very diffusion of responsibility and consequent confusion over accountability the Manual appears concerned with. Accountability and responsibility would have been more clearly assignable had Focus itself been appointed as the ombudsman rather than employed as an "advisor."

Subject to the specific limitations discussed above and within the scope of the Ombudsman's role, as analyzed by the court, the Applications are GRANTED. Should the general or specific limits imposed throughout this opinion prove unacceptable or unclear to the Ombudsman,[15] the court's decision is without prejudice to the Ombudsman's request for clarification or a request that the scope of the employment of H&W or Focus be expanded.

# # # # END OF MEMORANDUM OPINION # # # #

---

[15] The court in this memorandum opinion essentially places the onus of restricting its work on each of the professionals employed, each thus bearing the risk that a failure to comply with the court's direction might affect its compensation. While the court is confident H&W and Focus can conform to these limits without difficulty, it nevertheless recognizes that caution may dictate a return by the Ombudsman to the court respecting the proper use of his professionals.